[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action seeking to recover monies due him pursuant of an oral agreement to render carpentry services in connection with the construction of an "addition" to the defendant's restaurant located on New Haven Road in Naugatuck, Connecticut. The defendant admits that he retained the plaintiff to build the "addition" and that the plaintiff did in fact render services relative thereto but claims that the plaintiff was in fact paid for those services and that the defendant is entitled to a setoff for the defective work performed by the plaintiff equivalent to the amount paid to another contract or retained to complete the job and correct the defective work.
Although the parties agree that there was in fact an oral agreement between them in connection with the construction of the "addition" they do not agree as to the specific terms of the agreement either as to compensation or the scope of the work agreed to be performed by the plaintiff. They do agree that the defendant was to provide the materials for the job and did in fact make financial arrangements with the Connecticut Lumber Company to supply materials to the job. The plaintiff, a carpenter, and remodeling contractor, did provide the defendant with rough sketches for the "addition" to be constructed (Exhibit 2), and on or about December, 1986, began to work pursuant to his agreement with the defendant. Although the parties disagree as to whether the plaintiff was hired as a general contractor, the court finds that in fact that the plaintiff was retained merely as a subcontractor to provide carpentry services in connection with the framing, the roofing and sheet rock and agreed to perform these services strictly on an hourly basis. The court finds that the defendant acted as the general contractor as evidenced by the fact that he applied for the building permit and designated himself as the "contractor" on that permit. (See Defendant's Exhibit 6). In addition, the defendant hired a subcontractor to do the site work and the foundation work and retained the other subcontractors including the electrical and plumbing subcontractors.
When the plaintiff began his work in December of 1986, he submitted weekly invoices to the defendant which specified the number of men who worked on the job and the total hours worked. (See Plaintiff's Exhibit C, D, E and F). The plaintiff claims that the agreed upon hourly rate was $20 and billed the defendant accordingly. The defendant paid the invoices for the weeks ending December 26 and December 31, 1986, (Exhibit E) and did not pay the five successive invoices (Exhibits C, D F). The parties agreed CT Page 772 that the plaintiff owed to the defendant the sum of $1,500 due the defendant for the cost of the dinner reception provided by the defendant for the plaintiff's daughter's wedding reception Plaintiff agreed to credit $500 on each of the first three invoices which in fact he did. Although there was conflicting testimony from the plaintiff as to the agreed hourly rate to be charged pursuant to the agreement, having initially testified to at the trial that that rate was $18.00 and then later changing his testimony stating that the agreed rate was $20.00, the court finds that the two initial invoices which were paid by the defendant, were charged at $20 per hour without protest from the defendant, and that in fact the parties agreed to $20.00 per hour.
The court finds that the plaintiff did perform the carpentry services as agreed and that the invoices rendered by the defendant and marked plaintiff's exhibits C, D, E and F did in fact accurately and honestly represent the number of men and hours worked on the job from December 9, 1986 through April of 1987 when the plaintiff terminated his services to the defendant. The plaintiff further claims that he and his men worked for the week ending January 31, 1987 for which he presented no invoice or other credible evidence, which claim the court rejects.
The plaintiff testified that he terminated his services in April of 1987 because he was no longer able to secure materials from the Connecticut Lumber Company. The defendant's credit was terminated as a result of his failure to make payment for materials supplied to the job. The plaintiff testified that at that point, April 30, 1987, the plaintiff had completed over 90% of the work that he had agreed to perform. The court rejects the defendant's claim that the plaintiff stopped working because the job was shut down by the Building Inspector. The court finds that the primary reason that the Building Inspector ordered the work to stop was due to the failure of the defendant to provide professional plans and specifications which were required under the state building code and which in fact was the his obligation. The court further finds that other than the corrective work required in connection with the defect in the platform, the plaintiff was not contractually responsible to correct the other work which the building inspector found to be unacceptable. The court finds that the work addressed by the building inspector and mentioned in the "Defendant's Trial Memorandum" 8-y-i-iii-iv was not corrective work but incomplete work which the plaintiff did not bill for and which he expected to complete if in fact the defendant paid him for his services and provided materials as agreed.
Although the defendant testified that in fact he paid the plaintiff for his services in cash in excess of the amount admitted by the plaintiff, the court finds that the testimony of CT Page 773 the plaintiff to be more credible and finds that the only payments made by the defendant were the two payments of $1,510.00 paid in December of 1986 and $1,790.00 paid in January of 1987. As stated, the court does accept the defendant's claim that the work performed by the plaintiff in connection with the construction of the platform was in fact defective and agrees that the defendant is entitled to a credit for the value of the services and materials necessary to correct this defective work. Although the defendant presented no evidence specifically with regards to the cost of correcting this defective work, the plaintiff testified that the platform could have been corrected by two men in one working day. (8 hours). The court finds that since the plaintiff did not consider the removal of the faulty work, a fair estimate to remove and correct the platform required the services of two men for two working days (16 hours). In addition, the plaintiff estimated that the cost of materials would only be $100 in connection with the placement of the platform since much of the materials could have been salvaged, the court finds that estimate to be reasonable. The court therefore finds that the defendant is entitled to a credit for the replacement of the platform in the amount of $740, that being the services of two workmen for 16 hours at $20 per hour plus $100 for materials.
The court finds that the plaintiff did in fact provide 994 man hours of labor to and on behalf of the defendant and that the defendant agreed to pay to the plaintiff $20 per hour for said services, a total of $19,880.00 (994 hours x $20). The court finds that the defendant made payments and was entitled to credits totaling $5,640. as follows: $1,500 credit for the daughter's wedding reception, $1,510, amount paid in December of 1986 and $1,790 payment made in January of 1987; and finally, a credit of $740 for the defective platform.
The court therefore renders judgment in favor of the plaintiff as against the defendants in the amount of $14,340.
PELLEGRINO, J. CT Page 774
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 775
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 776
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 777
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 778
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 779